**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**James DELLAVECCHIA, Appellant.**

Superior Court of Pennsylvania.

Argued May 13, 1998.

Filed Dec. 31, 1998.

Richard T. Brown, Jr., Philadelphia, for appellant.

William G. Young, Asst. Dist. Atty., Philadelphia, for Commonwealth, Appellee.

Before McEWEN, President Judge, and DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT, JOYCE, MUSMANNO, ORIE MELVIN and SCHILLER, JJ.

JOYCE, J.:

This is an appeal from the judgment of sentence, as made final by the denial of post-sentencing motions,[1] entered after Appellant, James Dellavecchia, was convicted of aggravated assault,[2] simple assault,[3] recklessly endangering another person[4] and driving under the influence of alcohol (DUI).[5] For the reasons set forth below, we affirm in part, reverse in part and remand for resentencing. Before addressing the merits of Appellant's

---

1. *See Commonwealth v. Chamberlain,* 442 Pa.Super. 12, 658 A.2d 395, 397 (1995), *appeal quashed,* 543 Pa. 6, 669 A.2d 877 (1995) and Pa.R.Crim.P. 1410 and comment thereto (providing that judgment of sentence becomes final for purposes of appeal when the trial court disposes of defendant's post-sentencing motion).

2. 18 Pa.C.S.A. § 2702(a)(1).

3. 18 Pa.C.S.A. § 2701(a)(1).

4. 18 Pa.C.S.A. § 2705.

5. 75 Pa.C.S.A. § 3731(a)(1).

claims, we will recount the pertinent facts underlying this appeal.

During the evening hours of August 17, 1993, sixteen (16) year old Cynthia Harrison sat in the front passenger seat of a 1988 Camaro owned by her boyfriend's father, Joseph Fiscaro. Ms. Harrison's eighteen (18) month old niece, Nina, sat on Ms. Harrison's lap. The Camaro was parked in the parking lane outside of Mr. Fiscaro's business.

As Mr. Fiscaro and his son stepped outside, they noticed a black truck traveling in the parking lane at a speed well in excess of the posted limit of thirty-five (35) miles per hour. The truck, which was driven by Appellant, collided with the Camaro, became airborne, landed on a Toyota Camry that was parked in front of the Camaro, flipped over and finally landed on its roof. Police and medical personnel were thereafter summoned to the scene.

The victims were transported to the hospital for treatment.[6] The investigating police officer detected an odor of alcohol emanating from Appellant's breath. Consequently, Appellant was arrested and transported to the police station. Testing revealed that Appellant had a blood-alcohol content of .194%. As a result, he was charged with various offenses arising out of this incident.

Appellant initially pled guilty to the crimes in November, 1994. However, he was later permitted to withdraw his plea. Appellant waived his right to be tried by a jury. Following a bench trial held in May and August of 1995, Appellant was convicted of the above offenses.[7]

The trial court sentenced Appellant to five and one-half (5½) to fifteen (15) years of imprisonment with regard to each of his aggravated assault convictions; these sentences were directed to run concurrently. He also received an additional sentence of one (1) to two (2) years for his DUI conviction. Appellant timely filed post-sentencing motions which were denied by the trial court. Appellant timely appealed[8] and presents the following issues for review: (1) whether the evidence was sufficient to show that Appellant had the requisite *mens rea* to sustain his convictions for aggravated assault; and (2) whether the sentencing court abused its discretion by failing to credit Appellant for the time served under house arrest prior to trial.

Before addressing the merits of these issues, we note that a three-judge panel of this Court initially authored a memorandum that reversed Appellant's aggravated assault convictions. *Commonwealth v. Dellavecchia*, No. 926 Philadelphia 1996 (Pa.Super. filed October 9, 1997) (unpublished memorandum). The Commonwealth filed a petition for reargument before the court *en banc*. The petition was granted. Accordingly, the panel's prior disposition was withdrawn and the matter was reargued before the court *en banc*. We issued an opinion affirming the judgment of sentence. *Commonwealth v. Dellavecchia*, No. 926 Philadelphia 1996 (Pa.Super. filed Dec. 31, 1998) (*en banc*). Within days of the filing of our *en banc* disposition, the Supreme Court announced its decision in *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998). Because *Comer* is dispositive, we withdrew our *en banc* disposition and directed the parties to file supplemental briefs addressing *Comer*. Briefs have now been

---

**6.** Nina was rendered unconscious and had stopped breathing as a result of the collision. Due to the fortuitous arrival of a former police officer who performed cardiopulmonary resuscitation, the child was revived. The record does not indicate that the child suffered any further injury. Ms. Harrison, however, was not so fortunate and sustained a broken neck in the crash. As a result, she was required to wear a painful immobilizing device called a "halo" which was bolted to her skull. Ms. Harrison wore the device for three (3) to three and one-half (3½) months. Although her injuries had healed, she continued to experience pain and weakness in her back and neck at the time of trial.

**7.** Although the trial judge also convicted Appellant of the offense of possession of an instrument of crime, 18 Pa.C.S.A. § 907, judgment on this conviction was vacated by the court *sua sponte*.

**8.** Appellant was represented during the trial, sentencing and post-sentencing proceedings by private counsel, James Lyons, Esquire. Attorney Lyons was permitted to withdraw. Although Appellant commenced this appeal *pro se*, new counsel, Richard Brown, Jr., Esquire, was appointed to represent Appellant.

received and this matter is ripe for resolution.

 Appellant initially challenges the sufficiency of the evidence for aggravated assault insofar as it relates to the *mens rea* element.

> In determining whether the Commonwealth has met its burden of proof, the test to be applied is: [w]hether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992) (citations and quotation marks omitted). We shall consider Appellant's arguments in accordance with this standard.

A person commits the crime of aggravated assault if he attempts to cause serious bodily injury to another or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1).[9] In construing the *mens rea* element of recklessness, our Supreme Court has repeatedly held:

> [M]ere recklessness is insufficient to support a conviction for aggravated assault, which requires a higher degree of culpability, i.e., that which considers and then disregards the threat necessarily posed to human life by the offending conduct. There must be an element of deliberation or conscious disregard of danger not present to the same extent in, e.g., reckless endangerment...or driving while intoxicated. ... [F]or the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue. The recklessness must, therefore, be such that life threatening injury is essentially certain to occur. This state of mind is, accordingly, equivalent to that which seeks to cause injury.

*Commonwealth v. Comer*, 552 Pa. 527, 532, 716 A.2d 593, 596 (1998) (quoting *Commonwealth v. O'Hanlon*, 539 Pa. 478, 482, 653 A.2d 616, 618 (1995)).[10]

 Pursuant to *Commonwealth v. Comer*, we are constrained to conclude that the evidence here is insufficient to establish the *mens rea* element needed to sustain Appellant's convictions for aggravated assault. In *Comer*, the defendant ingested alcohol and "downers" or "muscle relaxants" while attending a party. *Comer*, 552 Pa. at 530, 716 A.2d at 595. The defendant and a companion left the party and decided to go to another bar. *Id.* The defendant, who drove at an excessive rate of speed, caused his vehicle to leave the roadway and crash into a bus stand. *Id.* Witnesses related that Comer's vehicle was "out of control" and cut off other cars as he sped along a busy urban thoroughfare. *Id.*, 552 Pa. at 530 and 539–41, 716 A.2d at 595 and 600. In fact, Comer drove at such velocity as to sever a light pole and strike the bus stop and pedestrians before crashing into a brick wall. *Id.*, 552 Pa. at 539–41, 716 A.2d at 600. Testing revealed that the defendant

---

9. The statute was amended in 1995 and 1996. The amendments pertained to other portions of the statute and are not applicable here. In addition, the *mens rea* elements of intentional or knowing conduct are not at issue. Accordingly, we will focus our attention on the element of recklessness.

10. *Comer* and *O'Hanlon* may be superseded in light of the legislature's enactment of 75 Pa. C.S.A. § 3735.1 (defining the crime of aggravated assault by vehicle while DUI). However, the statute did not go into effect until April 23, 1996. *See* Act of February 23, 1996, P.L. 21, No. 8, §9 (providing that the act was effective in sixty (60) days). Because the instant crime occurred prior to the effective date, the statute does not affect our disposition and will not be further addressed.

had a blood-alcohol content of .033%. *Id.*, 552 Pa. at 529–31, 716 A.2d at 595.

The defendant challenged the sufficiency of the evidence relating to the *mens rea* element on appeal. *Id.* Our Supreme Court determined that while the defendant's conduct was criminally reprehensible, the evidence was insufficient to establish that he possessed the state of mind equivalent to that which seeks to cause injury. *Id.*, 552 Pa. at 531–33, 716 A.2d at 596. The fact that the defendant had ingested alcohol and controlled substances was not deemed controlling. *Id.*, 552 Pa. at 533–35, 716 A.2d at 597.

Notwithstanding the Commonwealth's efforts, we are not persuaded that the facts presented here are materially distinguishable from those presented in *Comer* so as to compel a different result. Like Comer, Appellant drove at an excessive rate of speed over congested city streets, weaving in and out of traffic, prior to the crash.[11] N.T. Trial, 5/1/95, at 26, 28–31, 41 and 51. Also like the defendant in *Comer*, Appellant was under the influence of intoxicating substances, as he stipulated at trial to the fact that he had a blood alcohol content of .194%. *Id.* at 22–23. If anything, the conduct in *Comer* was more egregious in that Comer made no attempt to apply his brakes or reduce his speed prior to striking the pedestrians. *Comer*, 552 Pa. at 529–31, 716 A.2d at 595. Appellant, however, did apply his brakes in an effort to avoid impact. N.T. Trial, 5/2/95, at 117–123.

As an intermediate appellate court, we are bound to apply the decisions of our Supreme Court absent a legally relevant distinction. Because the facts of this case are substantially similar to those presented in *Comer*, we conclude that the evidence was insufficient to establish that Appellant possessed a state of mind equivalent to that which seeks to cause injury. We therefore reverse Appellant's aggravated assault convictions. Because our disposition has impacted upon the overall sentencing scheme, we vacate the judgment of sentence on Appellant's remaining convictions and remand for resentencing thereon.[12] *See Commonwealth v. Ward*, 524 Pa. 48, 52, 568 A.2d 1242, 1244 (1990) (where an appellate court determines that a sentence is illegal or otherwise improper, the proper remedy is to vacate the sentence and remand the matter to the trial court for sentencing in accordance with the appellate disposition).

Judgment of sentence for aggravated assault reversed and Appellant discharged thereon. In all other respects, Appellant's convictions are affirmed. Judgment of sentence for the remaining convictions vacated. Remanded for resentencing. Jurisdiction relinquished.

SCHILLER, J., files Dissenting Statement.

SCHILLER, J., dissenting:

I respectfully dissent. In my opinion, this case is distinguishable from *Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998) and is akin to *Commonwealth v. Scofield*, 360 Pa.Super. 552, 521 A.2d 40 (1987), *appeal denied*, 517 Pa. 593, 535 A.2d 82 (1987), in that Appellant was aware of his reckless conduct. He was observed immediately before the crash to be travelling at an excessive rate of speed, "zoom[ing] in and out through other cars." Appellant applied his brakes before colliding with the vehicle in which the victims were sitting, leaving approximately 168 feet of skid marks. Moreover, after the collision, Appellant attempted to leave the scene but was prevented from doing so. Despite Appellant's obviously intoxicated condition, I would find under these circumstances that he consciously disregarded the threat his dangerous conduct posed to human life and, therefore, that he possessed the requisite *mens rea* for aggravated assault.

---

**11.** Based on the length of the skid marks and a drag test, the investigating officers estimated that Appellant's vehicle was traveling at a minimum speed of 58.14 miles per hour. N.T. Trial, 5/3/95, at 27. The posted speed limit in the area was 35 miles per hour. N.T. Trial, 5/2/95, at 128–129.

**12.** In view of our disposition, we need not address Appellant's sentencing claims.