J-S31010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KENNETH GAILYN HIXON, III, | |
| Appellant | No. 29 MDA 2015 |

Appeal from the Judgment of Sentence August 5, 2014
In the Court of Common Pleas of Perry County
Criminal Division at No(s): CP-50-CR-0000410-2012

BEFORE:  SHOGAN, OTT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JUNE 10, 2016**

Appellant, Kenneth Gailyn Hixon, III, appeals from the judgment of sentence[1] entered following his convictions of one count each of homicide by vehicle, aggravated assault, aggravated assault by vehicle, involuntary manslaughter, three counts each of simple assault and recklessly endangering another person ("REAP"), and one count each of the summary

_____

[*]  Retired Senior Judge assigned to the Superior Court.

[1] Although Appellant purported to appeal from the December 18, 2014 order denying his post-sentence motion by operation of law, the appeal properly lies from the judgment of sentence entered on August 5, 2014.  We have corrected the caption accordingly.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (explaining that in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions).

offenses of disregarding traffic lane, driving at a safe speed, careless driving, and reckless driving. We affirm.

We summarize the tragic history of this case as follows. On November 11, 2011, Appellant was driving his 1999 Jeep Grand Cherokee on Landisburg Road in Caroll Township, Pennsylvania, after imbibing alcohol. Appellant failed to navigate a sharp curve in the road and traveled into the opposing lane of traffic. While in the opposite lane of traffic, Appellant struck, head on, a Suzuki Sidekick being driven by Nathan Aaron Lukens. Mr. Lukens had two passengers in his vehicle, *i.e.*, his four-year-old son Logan Lukens, and Logan's mother, Brandy Mutzabaugh. The accident resulted in the death of Mr. Lukens. Both Logan and Ms. Mutzabaugh suffered injuries from the head-on collision. On November 2, 2012, the Commonwealth filed a criminal information charging Appellant with numerous crimes related to the accident.

The case proceeded to a nonjury trial on February 11, 2014. On February 14, 2014, the trial court rendered its verdict finding Appellant guilty of the crimes stated above. The trial court initially scheduled a sentencing hearing for April 4, 2014. However, on April 4, 2014, Appellant argued in open court that various crimes should merge for sentencing purposes. As a result, the trial court postponed sentencing and directed the parties to file briefs on the matter. In addition to filing a brief as directed by the trial court, Appellant filed a motion to vacate the judgment of guilt on

May 12, 2014. On June 18, 2014, the trial court entered an order granting Appellant's motion to vacate the judgment of guilt with regard to the convictions of aggravated assault and aggravated assault by vehicle. On June 30, 2014, the Commonwealth filed a motion to reconsider the order vacating the judgment of guilt, which the trial court initially denied on July 7, 2014. On August 5, 2014, the trial court sentenced Appellant to serve an aggregate term of incarceration of thirty-six to seventy-two months. Also on August 5, 2014, in light of the Commonwealth's motion to reconsider the June 18, 2014 order vacating two convictions, the trial court entered an order rescinding the order of June 18, 2014, and reinstating the original verdict of February 14, 2014. Appellant filed a timely post-sentence motion on August 12, 2014. The trial court failed to act on Appellant's post-sentence motion, and an order was entered on December 18, 2014, indicating that the motion was denied by operation of law. Appellant filed this timely appeal on January 2, 2015. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our consideration:

1. Was insufficient evidence presented to establish the required *mens rea* of malice as required to sustain a conviction of aggravated assault, 18 Pa.C.S.A §2702?

2. Was insufficient evidence presented to establish the required *mens rea* of recklessness or gross negligence as required to sustain a conviction of aggravated assault by vehicle, 75 Pa.C.S.A §3732.1, homicide by vehicle, 75 Pa.C.S.A §3732, involuntary manslaughter, 18 Pa.C.S.A §2504, simple assault,

18 Pa.C.S.A §2701, recklessly endangering another person, 18 Pa.C.S.A §2705 and reckless driving, 75 Pa.C.S.A §3736?

Appellant's Brief at 4.

Appellant's issues each challenge the sufficiency of the evidence to support his convictions. We analyze such arguments under the following parameters:

> Our standard when reviewing the sufficiency of the evidence is whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict-winner, are sufficient to establish all elements of the offense beyond a reasonable doubt. We may not weigh the evidence or substitute our judgment for that of the fact-finder. Additionally, the evidence at trial need not preclude every possibility of innocence, and the fact-finder is free to resolve any doubts regarding a defendant's guilt unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence. For purposes of our review under these principles, we must review the entire record and consider all of the evidence introduced.

***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (quoting ***Commonwealth v. Emler***, 903 A.2d 1273, 1276-1277 (Pa. Super. 2006)).

In his first argument, Appellant argues that there is insufficient evidence of his *mens rea* to sustain his conviction of aggravated assault. Appellant's Brief at 9-14. Specifically, Appellant contends that there was no evidence of malice required to support such a conviction.

Aggravated assault is defined in the crimes code, in relevant part, as follows:

**§ 2702. Aggravated assault.**

**(a) Offense defined. —**A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S. § 2702(a)(1).

With regard to the Commonwealth's burden of eliciting sufficient evidence of a defendant's *mens rea* to commit aggravated assault, we have stated the following:

When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm. As we noted in [**Commonwealth v. Patrick**, 933 A.2d 1043 (Pa. Super. 2007)], the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life.

**Commonwealth v. Burton**, 2 A.3d 598, 602 (Pa. Super. 2010). Thus, our inquiry is whether the evidence and all reasonable inferences derived therefrom were sufficient to establish that Appellant acted "recklessly under circumstances manifesting an extreme indifference to human life." **Burton**, 2 A.3d at 602.

To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial

- 5 -

> element of aggravated assault. **Malice consists of a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty**, although a particular person may not be intended to be injured. Motor vehicle crashes seldom result in an aggravated assault conviction because of the heightened *mens rea*. However, in some circumstances the malice requirement has been met, and this court has not hesitated to uphold an aggravated assault or a third degree murder charge depending on the particular facts of a motor vehicle crash.

> This Court additionally concluded that "**a motorist's conduct is more egregious if he does not apply his** [**brakes**] **or attempt to slow down before a collision** than if he attempts to flee."

***Commonwealth v. Riggs***, 63 A.3d 780, 784-785 (Pa. Super. 2012)

(citations omitted) (emphases added).

Moreover, this Court has summarized our Supreme Court's precedents

on aggravated assault in motor vehicle crashes as follows:

> In [***Commonwealth v. O'Hanlon***, 653 A.2d 616 (Pa. 1995)], a driver ran a red light and struck another vehicle, causing serious injury to another driver. Our Supreme Court reversed the appellant's conviction for aggravated assault on the basis that he was guilty only of mere recklessness, stating that "serendipity, not intention, placed the victim in his path when he drove through the red light." ***O'Hanlon***, 653 A.2d at 618. More recently, in [***Commonwealth v. Comer***, 716 A.2d 593 (Pa. 1998)], our Supreme Court reversed a conviction for aggravated assault where the appellant, who had ingested alcohol and barbiturates, drove his car at an excessive rate of speed. As he was driving, the right tire of the appellant's car rubbed the curb, and then the vehicle left the highway, crashed into a bus stop, and eventually struck a brick wall. One person was killed and another was severely injured as a result of the appellant's actions. Our Supreme Court held that the appellant's conduct, while criminally reprehensible, was nonetheless insufficient to

establish the state of mind equivalent to that which seeks to cause injury.

As we noted in [**Commonwealth v. Kling**, 731 A.2d 145, 147 (Pa. Super. 1999)], however, in both **O'Hanlon** and **Comer**, our Supreme Court distinguished this Court's holding in **Commonwealth v. Scofield**, 521 A.2d 40 (Pa. Super. 1987), *appeal denied*, 535 A.2d 82, wherein we upheld the appellant's conviction for aggravated assault. In **Scofield**, the appellant was driving his car and scraped it against the bumper of another vehicle parked on the street. Although sparks emanated, Scofield drove another ten feet, swerved onto the sidewalk and struck a building. A passing cabdriver, who realized Scofield had struck a pedestrian and trapped him under the fender of the vehicle, approached Scofield's car and told him to turn off the car. The cabdriver even attempted to reach into the car and remove the keys. Scofield, however, became belligerent and assaulted the cabdriver. He then tried to put his car into reverse, but a flat tire prevented his flight. We concluded that Scofield's behavior prior to and after the accident established his awareness of the risk of serious injury, and, therefore, we upheld his aggravated assault conviction.

In distinguishing this Court's holding in **Scofield** from the case in **Comer**, our Supreme Court opined that the "circumstances [in **Scofield**] demonstrated a higher degree of recklessness than those presented in [**Comer**]," noting that in **Comer**, the appellant "sped past another vehicle, his car rubbed the curb of the sidewalk and the accident ensued immediately thereafter." **Comer**, 716 A.2d at 597. As we noted in **Kling**, "the cornerstone of this conclusion rested with the notion [that] Scofield considered, then disregarded, the threat to the life of the victim;" and, in **Comer**, our Supreme Court "indicated a conviction based on malice is appropriate where evidence demonstrates the element of sustained recklessness by a driver in the face of an obvious risk of harm to his victims." **Kling**, 731 A.2d at 149 (emphasis original).

**Commonwealth v. Allen**, 833 A.2d 800, 803-804 (Pa. Super. 2003).

Our review of the certified record, in the light most favorable to the

Commonwealth, reflects ample evidence of Appellant's *mens rea* of

recklessness rising to the level of malice to support his conviction of aggravated assault. At trial, the Commonwealth presented testimony from Pennsylvania State Trooper Jeremy Baluh. N.T., 2/11/14, at 54-61. Trooper Baluh testified that he spoke with Appellant in a hospital room after the accident, and Appellant admitted to the officer that he had been at the White Oaks Bar prior to the accident. *Id*. at 61. In addition, the Commonwealth presented testimony from Cynthia Womer, an ambulance worker who responded to the scene of the accident. *Id*. at 39-44. Ms. Womer stated that Appellant admitted to her that he had consumed alcohol that evening, but that Appellant did not know how much he had to drink. *Id*. at 42. The Commonwealth also presented testimony from Trooper Jeffrey Vitek of the Pennsylvania State Police, who responded to the accident. *Id*. at 62-79, 124-128. Trooper Vitek testified that he interviewed Appellant outside of the ambulance at the scene of the accident and that Appellant was incoherent and had an odor of alcohol on his breath. *Id*. at 69, 71. Trooper Vitek also stated that when he investigated the scene of the accident he saw a crushed empty beer can immediately outside of the driver's door of Appellant's vehicle and a cardboard case of beer with a few beers remaining in it on the floorboard of the front passenger side of Appellant's vehicle. *Id*. at 70. Trooper Vitek testified that it was his opinion, that on the night of the accident, Appellant was impaired and incapable of safely driving his vehicle. *Id*. at 125-126.

Further, the Commonwealth presented the testimony of Gary Schmahl. *Id*. at 28-38. Mr. Schmahl indicated that he happened to be driving behind Appellant prior to the accident. *Id*. at 29-40. Mr. Schmahl testified that he was following Appellant just before the accident and that, even though there is a traffic warning sign urging drivers to slow down approaching the curve in the road, he did not see Appellant apply his brakes prior to approaching the curve where the accident occurred. *Id*. at 33. The Commonwealth also presented the testimony of Corporal Andrew Thierwechter, an expert with the Pennsylvania State Police Collision Analysis and Reconstruction Specialist Unit, regarding his analysis of the accident scene. *Id*. at 79-114. Corporal Thierwechter explained that the weather on the night of the accident was cold but dry, and there were no adverse weather conditions. *Id*. at 98. Corporal Thierwechter stated that upon initial investigation of the scene he observed a crushed empty "Miller High Life" beer can on the ground outside of Appellant's vehicle. *Id*. at 89. He further testified that he later saw a "Miller High Life" thirty-pack case in the front passenger area of Appellant's vehicle that contained only four full beer cans. *Id*. In addition, Corporal Thierwechter observed an empty uncrushed beer can in the foot-well of the vehicle. *Id*. He stated that the beer cans and the case were all stamped with the same expiration date. *Id*.

Regarding the accident, Corporal Thierwechter opined that Appellant had been traveling between forty-nine and fifty-four miles per hour at the

time of impact. *Id*. at 103. He also stated that there is a warning sign with a suggested speed limit of thirty miles per hour through the curved area of the roadway where the accident occurred. *Id*. at 99. Corporal Thierwechter also opined that the maximum speed at which the curve could be navigated was no more than forty-three miles per hour. *Id*. at 94. He stated that his calculations indicated that the other vehicle involved in the accident was traveling eight to sixteen miles per hour at the time of impact, and there were no skid marks from the other vehicle. *Id*. at 102, 110.

This evidence establishes that Appellant was driving while impaired from alcohol, exceeded the posted speed limit as well as the posted reduced advisory speed limit, failed to apply his brakes in approaching a dangerous curve in the roadway or at any time prior to the accident, passed into the opposing lane of traffic, and struck another vehicle in a head-on collision causing death to the driver and serious bodily injury to the passengers. Hence, the Commonwealth sustained its burden of proof of Appellant's *mens rea* of sustained recklessness rising to the level of malice necessary for a conviction of aggravated assault. Thus, Appellant's contrary claim fails.

In his second issue, Appellant argues that the Commonwealth failed to present sufficient evidence to support his convictions of aggravated assault by vehicle, homicide by vehicle, involuntary manslaughter, simple assault, REAP, and reckless driving. Appellant's Brief at 14-19. Appellant contends that each of these crimes requires that the Commonwealth prove Appellant

acted with recklessness or gross negligence, and the Commonwealth failed in presenting such evidence to support the convictions. We disagree.

Aggravated assault by vehicle is defined in the Motor Vehicle Code as follows:

> **(a) Offense. —** Any person who **recklessly or with gross negligence** causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury.

75 Pa.C.S. § 3732.1 (emphasis added).

Homicide by vehicle is defined in the Motor Vehicle Code as follows:

> **(a) Offense. —** Any person who **recklessly or with gross negligence** causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S. § 3732 (emphasis added).

The crime of involuntary manslaughter is defined in the Crimes Code as follows:

> **(a) General rule. —** A person is guilty of involuntary manslaughter when as a direct result of **the doing of an unlawful act in a reckless or grossly negligent manner**, or **the doing of a lawful act in a reckless or grossly negligent manner**, he causes the death of another person.

18 Pa.C.S. § 2504 (emphases added).

- 11 -

The crime of simple assault is defined, in pertinent part, as follows:

**(a) Offense defined. —** [A] person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or **recklessly** causes bodily injury to another[.]

18 Pa.C.S. § 2701(a)(1) (emphasis added).

The crime of REAP is defined in the Crimes Code as follows:

A person commits a misdemeanor of the second degree if he **recklessly** engages in conduct which places or may place another person in danger of death or serious bodily injury.

18 Pa.C.S. § 2705 (emphasis added).

Finally, reckless driving is defined in the Motor Vehicle Code as follows:

**(a) General rule. —** Any person who drives any vehicle in **willful or wanton disregard for the safety of persons or property** is guilty of reckless driving.

75 Pa.C.S. § 3736 (emphasis added). We have explained that the language of "willful or wanton disregard for the safety of persons or property" is synonymous with recklessness as it is defined in the Crimes Code, and as the title "reckless driving" implies. *Commonwealth v. Bullick*, 830 A.2d 998, 1002 (Pa. Super. 2003). Thus, each of the aforementioned crimes requires a proof of conduct that is reckless or grossly negligent. Appellant specifically claims that the Commonwealth failed to establish that his conduct was reckless or grossly negligent.

We have reviewed the briefs of the parties, the relevant law, the certified record before us on appeal, and the opinion of the trial court. The

trial court addressed Appellant's argument with the following apt analysis, which we adopt as our own:

> [T]he Commonwealth may prove recklessness by circumstantial evidence; however, "the pieces of evidence must fit together so tightly as to establish guilt beyond a reasonable doubt." ***See Com. v. Hogan***, 468 A.2d 493, 496 (Pa. Super. Ct. 1983). While case law is clear that alcohol or drug impairment is not reckless, per se, it is relevant in determining whether Appellant's recklessness was malicious. ***Id***. This impairment, coupled with "tangible indicia" of unsafe driving, evidences a conscious disregard of the substantial risk of harm that make be caused to others on the roadway. ***Com. v. Jeter***, 937 A.2d 466, 468 (Pa. Super. Ct. 2007). This indicia includes failing to brake or refusing to slow down before a collision. ***Com. v. Dellavecchia***, 725 A.2d 186, 189 (Pa. Super. Ct. 1998).
>
> In this case, the Commonwealth first presented Gary Schmahl, who testified that on the night in question, [Appellant] turned in front of him onto Rte 850. He followed and noted that he saw no brake lights as [Appellant] crested the hill and turned the corner at Gibson's Rock. Cynthia Womer, the EMT on the scene, testified that when she asked [Appellant] if he had consumed alcohol, he responded that he had and he did not know the exact amount he consumed. In addition, Trooper Vitek who was also present at the scene testified to smelling an odor of alcohol on [Appellant] and noted that [Appellant's] responses were incoherent when he was questioned. The Trooper further testified that he found a case of beer in the vehicle with six cans remaining. Another officer, Trooper Baluh, was present at the hospital with [Appellant]. He testified that [Appellant] admitted during that conversation to having been at the White Oaks bar prior to the accident. Finally, Corporal Thierwechter testified as an expert witness regarding the accident reconstruction and analysis. He testified that [Appellant] must have been traveling at 49-54 mph around a curve that could only be traveled at 43 mph in order to remain in the proper lane. Corporal Thierwechter testified that in his opinion, the accident was a direct result of [Appellant's] excessive speed.
>
> There is some case law which presents similar facts to the case at hand while also establishing negative authority on these issues. ***See Com. v. Hutchins***, 42 A.3d 302 (Pa. Super. Ct.

2012); *See Com. v. Bullick*, 830 A.2d 998 (Pa. Super. Ct. 2003). However, upon careful review, these cases are distinguishable from nuances of this particular case.

The [a]ppellant [in] *Hutchins* argued that insufficient evidence was presented to prove that the car accident was caused by [the a]ppellant's impairment. *Id*. at 307. The Trooper on the scene suspected [the a]ppellant was under the influence. *Id*. at 304. He then inquired whether he was under the influence to which [the a]ppellant confessed that he had smoked marijuana earlier in the day. *Id*. While the Court held that there was sufficient evidence to establish [the a]ppellant[']s conviction of a DUI, it also ruled that there was insufficient evidence to establish a conviction for [REAP]. *Id*. at 312. In ruling, the Court stated that the Commonwealth was required to present evidence of recklessness in addition to [the a]ppellant's intoxication. *Id*. It further noted, the only other relevant evidence presented in this matter is that an accident occurred. *Id*. There was no additional evidence of recklessness except [the a]ppellant's own admission to having smoked marijuana earlier. *Id*.

Although the facts are very similar, there was more testimony elicited in this case concerning [Appellant's] actions than in *Hutchins*. In addition to Appellant's own admission that he was at the White Oaks Bar immediately prior to this incident, the Commonwealth supplied testimony from multiple trained individuals stating that Appellant possessed several indications of intoxication. The Trooper further testified he also discovered a half-consumed case of beer in Appellant's car.

This evidence was bolstered by additional evidence of unsafe driving. An eye witness driving behind Appellant testified that Appellant was not adhering to the speed limit and the witness did not see any braking from Appellant's car as it crested the hill immediately prior to the incident. Finally, the Commonwealth's expert witness concluded that Appellant's excessive speed directly resulted in this accident occurring. These facts clearly present more evidence than what was offered in *Hutchins*.

In *Bullick*, the Court also found there was insufficient evidence to support [the] defendant's convictions. *Bullick*, at 1003. The Court acknowledged that while circumstantial

evidence can be sufficient, the Commonwealth's evidence was limited to skid marks allegedly leading to a damaged vehicle and the assumption that [the a]ppellant was drinking before the accident. *Id*. The Court noted that no expert witness was produced and no eyewitnesses existed to corroborate the Commonwealth's theory. *Id*. at 1004. It further observed that the Commonwealth failed to even establish an applicable speed limit on the road in question. *Id*. at 1005.

Once again these facts are different than those presented in this case. As previously mentioned, an eye witness testified to Appellant's speed and lack of braking immediately prior to the incident. Several other individuals testified to the signs of Appellant's apparent intoxication and alcohol was found in Appellant's car. Moreover, the Commonwealth established the applicable speed limit as 45 mph, however it also presented evidence of an advisory sign recommending a speed limit of no more than 30 mph. Following this, the expert witness established Appellant **must** have been going 49-54 mph, in order to cross the yellow line in such a way. The expert concluded that the collision was a direct result of Appellant's excessive speed. Thus, the Commonwealth presented much further evidence supporting Appellant's convictions than ***Bullick***.

In light of the evidence presented at trial, the [c]ourt found that Appellant's actions evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death. [Appellant's] cumulative conduct was consciously reckless, and the evidence supports the [c]ourt's finding that he possessed the requisite mens rea to commit these offenses. As such, the [c]ourt did not err in its ruling.

Trial Court Opinion, 9/25/15, at 2-5 (emphasis in original). On the basis of the analysis stated above and our review of the certified record, we conclude that Appellant's claim that the Commonwealth failed to establish that his conduct was reckless lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2016

COMMONWEALTH

V.

KENNETH GAILYN HIXON

:IN THE COURT OF COMMON
:PLEAS
:OF THE 41ST JUDICIAL
:DISTRICT
:OF PENNSYLVANIA –
:PERRY COUNTY BRANCH
:CP-50-CR-0000410-2012

## FINAL MEMORANDUM

Kenneth Gailyn Hixon (hereinafter "Appellant") appeals from the Order denying his Post Sentence Motion on December 18, 2014. Following a Non-Jury trial on February 11, 2014, Appellant was found guilty of one (1) count Aggravated Assault, a Felony of the First Degree, in violation of Title 18 § 2702(a)(1) and one (1) count Simple Assault, a Misdemeanor of the Second Degree, in violation of Title 18 § 2701(a)(1). Appellant filed a Motion to Vacate Judgment of Guilt on May 12, 2014. Following a Hearing on June 18, 2014, the Court granted Appellant's Motion, vacating one (1) count Aggravated Assault and one (1) count of Aggravated Assault by Vehicle. On June 30, 2014, the Commonwealth filed a Motion to Reconsider Vacation of Judgment, which the Court denied on July 7, 2014. However, on August 5, 2014, the Court reversed that decision, ruling that after review of the record and relevant case law, the June 18, 2014, Order was rescinded and the verdict of February 14, 2014, was reinstated. On that same day, the Court sentenced Appellant to a total sentence of minimum of thirty-six (36) months, maximum seventy-two (72) months period of incarceration in a State Correctional Institution. Appellant subsequently filed a Post Sentence Motion on August 12, 2014. This Motion was denied by operation of law on December 18, 2014. Appellant filed an appeal with the Superior Court and by Order dated January 2, 2015, this Court directed that he file a Concise Statement of Matters Complained of on Appeal. On February 12, 2015, Appellant filed his Statement, alleging insufficient evidence was presented to establish Appellant possessed a mens rea of malice, gross negligence or recklessness as required by the offenses for which Appellant was found guilty.

# ARGUMENT

Appellant argues that the Commonwealth failed to provide sufficient evidence to establish that Appellant acted with the required mens rea for any of the charges of which he was found guilty. More specifically, Appellant asserts that the Commonwealth failed to prove that he exhibited malice as required by Aggravated assault, 18 Pa.C.S. § 2702. Moreover, Appellant suggests that insufficient evidence was presented to prove he acted recklessly or with gross negligence as required by Aggravated Assault by vehicle, 75 Pa.C.S. § 3732.1, Homicide by Vehicle, 75 Pa.C.S. § 3732, Involuntary Manslaughter, 18 Pa.C.S. § 2504, Simple Assault, 18 Pa.C.S. § 2701, Recklessly Endangering Another Person, 18 Pa.C.S. § 2705, and Reckless Driving, 75 Pa.C.S. § 3736.

A person is guilty of aggravated assault if he causes serious bodily injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S. § 2702. To prevail on a theory of recklessness, the Commonwealth must prove Appellant's recklessness rose to the level of malice. *Com. v. Miller*, 955 A.2d 419, 422 (Pa. Super. Ct. 2008). "Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* Courts have also found that a conviction based on malice is appropriate where there is evidence of "sustained recklessness" of a driver in the "face of an obvious risk of harm to his victims." *Id.* at 422-423.

In addition, the Commonwealth may prove recklessness by circumstantial evidence; however, "the pieces of evidence must fit together so tightly as to establish guilt beyond a reasonable doubt." *See Com. v. Hogan*, 468 A.2d 493, 496 (Pa. Super. Ct. 1983). While case law is clear that alcohol or drug impairment is not reckless, per se, it is relevant in determining whether Appellant's recklessness was malicious. *Id.* This impairment,

2

coupled with "tangible indicia" of unsafe driving, evidences a conscious disregard of the substantial risk of harm that make be caused to others on the roadway. *Com. v. Jeter*, 937 A.2d 466, 468 (Pa. Super. Ct. 2007). This indicia includes failing to brake or refusing to slow down before a collision. *Com. v. Dellavecchia*, 725 A.2d 186, 189. (Pa. Super. Ct. 1998).

In this case, the Commonwealth first presented Gary Schmahl, who testified that on the night in question, Defendant turned in front of him onto Rte 850. He followed and noted that he saw no brake lights as Defendant crested the hill and turned the corner at Gibson's Rock. Cynthia Womer, the EMT on the scene, testified that when she asked the Defendant if he had consumed alcohol, he responded that he had and he did not know the exact amount he consumed. In addition, Trooper Vitek who was also present at the scene testified to smelling an odor of alcohol on the Defendant and noted that Defendant's responses were incoherent when he was questioned. The Trooper further testified that he found a case of beer in the vehicle with six cans remaining. Another officer, Trooper Baluh, was present at the hospital with Defendant. He testified that Defendant admitted during that conversation to having been at the White Oaks bar prior to the accident. Finally, Corporal Thierwechter testified as an expert witness regarding the accident reconstruction and analysis. He testified that Defendant must have been traveling at 49-54 mph around a curve that could only be traveled at 43 mph in order to remain in the proper lane. Corporal Thierwechter testified that in his opinion, the accident was a direct result of Defendant's excessive speed.

There is some case law which presents similar facts to the case at hand while also establishing negative authority on these issues. *See Com. v. Hutchins*, 42 A.3d 302 (Pa. Super. Ct. 2012); *See Com. v. Bullick*, 830 A.2d 998 (Pa. Super. Ct. 2003). However, upon careful review, these cases are distinguishable from nuances of this particular case.

The Appellant *Hutchins* argued that insufficient evidence was presented to prove that the car accident was caused by Appellant's impairment. *Id.* at 307. The Trooper on the scene suspected Appellant was

under the influence. *Id.* at 304. He then inquired whether he was under the influence to which Appellant confessed that he had smoked marijuana earlier in the day. *Id.* While the Court held that there was sufficient evidence to establish Appellants conviction of a DUI, it also ruled that there was insufficient evidence to establish a conviction for Recklessly Endangering Another Person. *Id.* at 312. In ruling, the Court stated that the Commonwealth was required to present evidence of recklessness in addition to Appellant's intoxication. *Id.* It further noted, the only other relevant evidence presented in this matter is that an accident occurred. *Id.* There was no additional evidence of recklessness except Appellant's own admission to having smoked marijuana earlier. *Id.*

Although the facts are very similar, there was more testimony elicited in this case concerning Defendant's actions than in *Hutchins*. In addition to Appellant's own admission that he was at the White Oaks Bar immediately prior to this incident, the Commonwealth supplied testimony from multiple trained individuals stating that Appellant possessed several indications of intoxication. The Trooper further testified he also discovered a half-consumed case of beer in Appellant's car.

This evidence was bolstered by additional evidence of unsafe driving. An eye witness driving behind Appellant testified that Appellant was not adhering to the speed limit and the witness did not see any braking from Appellant's car as it crested the hill immediately prior to the incident. Finally, the Commonwealth's expert witness concluded that Appellant's excessive speed directly resulted in this accident occurring. These facts clearly present more evidence than what was offered in *Hutchins*.

In *Bullick*, the Court also found there was insufficient evidence to support defendant's convictions. *Bullick*, at 1003. The Court acknowledged that while circumstantial evidence can be sufficient, the Commonwealth's evidence was limited to skid marks allegedly leading to a damaged vehicle and the assumption that Appellant was drinking before the accident. *Id.* The Court noted that no expert witness was produced and no eyewitnesses existed

4

to corroborate the Commonwealth's theory. *Id.* at 1004. It further observed that the Commonwealth failed to even establish an applicable speed limit on the road in question. *Id.* at 1005.

Once again these facts are different than those presented in this case. As previously mentioned, an eye witness testified to Appellant's speed and lack of braking immediately prior to the incident. Several other individuals testified to the signs of Appellant's apparent intoxication and alcohol was found in Appellant's car. Moreover, the Commonwealth established the applicable speed limit as 45 mph, however it also presented evidence of an advisory sign recommending a speed limit of no more than 30 mph. Following this, the expert witness established Appellant *must* have been going 49-54 mph, in order to cross the yellow line in such a way. The expert concluded that the collision was a direct result of Appellant's excessive speed. Thus, the Commonwealth presented much further evidence supporting Appellant's convictions than *Bullick*

In light of the evidence presented at trial, the Court found that Appellant's actions evidenced a conscious disregard of the substantial and unjustified risk that he would be involved in a traffic accident causing death. His cumulative conduct was consciously reckless, and the evidence supports the Court's finding that he possessed the requisite mens rea to commit these offenses. As such, the Court did not err in its ruling.

BY THE COURT,

---

RICHARD N. SAXTON, JR., S.J.
25TH Judicial District, Specially Presiding

Date: September _____, 2015

cc:     District Attorney
        Edward Spreha, Esq.