J-S14022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MATHEW T. SHIRK | |
| Appellant | No. 1942 MDA 2014 |

Appeal from the Judgment of Sentence July 7, 2014
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000182-2013

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 18, 2016**

Appellant, Mathew T. Shirk, appeals from the judgment of sentence entered after a jury convicted him of multiple charges arising from an incident where Shirk rolled a vehicle that he was operating while under the influence of alcohol. On appeal, Shirk raises six issues, the most noteworthy of which involve the legal effect of inconsistent verdicts entered by the jury. After careful review, we conclude that the trial court erred in accepting the Commonwealth's invitation to ignore the verdict actually entered by the jury, and instead sentencing Shirk according to the verdict that the Commonwealth desired. On this single issue, we vacate the offending sentences and remand for re-sentencing. We affirm on all other issues.

_____

[*] Former Justice specially assigned to the Superior Court.

Shirk and several friends, namely Ryan Daniels, Kelly Rider, and Emilee Neely, were drinking at a bar on the night of the accident. Shortly after midnight, they left the bar to go on a "mountain ride" in Shirk's brother's heavily modified pickup truck. Shirk bought a six pack of beer to bring along with them. Shirk did not possess a valid driver's license at the time.

After driving off-road for a significant time, it started to rain. Shirk drove the truck out of the woods and onto Route 144. As he drove through a curve on Route 144, Shirk lost control of the truck. It left the roadway, flipped several times, and struck several trees.

Shirk, Daniels and Rider were ejected from the truck. Rider was killed, while Shirk, Daniels and Neely each suffered injuries. Blood tests at the hospital that treated Shirk revealed that his blood alcohol concentration was 0.196, more than twice the legal limit.

The Commonwealth charged Shirk with 26 crimes, including homicide by vehicle while driving under the influence ("DUI"), aggravated assault by vehicle while DUI, accident involving death or bodily injury – not properly licensed, and reckless driving. After a trial, the jury found Shirk guilty on all charges. The jury was also asked to provide a specific finding with regard to the accident involving bodily injury – not properly licensed charge ("the license charge"). This finding was intended to address the grading of the license charge. If the jury found that the victim suffered only bodily injury,

the crime is graded as a misdemeanor. However, if the jury found that the victim suffered serious bodily injury, the crime is graded as a felony. The jury found that Daniels and Neely had suffered only bodily injury, and not serious bodily injury. This specific finding was in direct conflict with the jury's verdicts on the aggravated assault charges, which required the jury to find that Daniels and Neely had suffered serious bodily injury.

At sentencing, the Commonwealth requested that the trial court sentence Shirk on the license charge as a felony, in direct contravention of the jury's specific finding. The trial court accepted the Commonwealth's suggestion, and sentenced Shirk on the license charge as a felony. The trial court imposed an aggregate term of imprisonment of eight to fourteen years.

Shirk filed a post-sentence motion, which the trial court denied. This timely appeal followed. On appeal, Shirk raises two challenges to the sentences imposed, two challenges to the admission of evidence at trial, and two challenges to the sufficiency of the evidence.

Shirk raises two distinct issues regarding the sentences he received. We first address his challenge to the sentences imposed on the license charges, as this issue challenges the legality of the sentence. A challenge to an illegal sentence can never be waived. *See Commonwealth v. Mathias*, 121 A.3d 558, 562 n.3 (Pa. Super. 2015). As a result, Shirk's failure to raise

this issue at sentencing or in his post-sentence motion does not prevent him from raising it on appeal.

"Issues relating to the legality of a sentence are questions of law. . . . Our standard of review over such questions is *de novo* and our scope of review is plenary." **Commonwealth v. Brougher**, 978 A.2d 373, 377 (Pa. Super. 2009) (citation omitted).

Shirk argues that the trial court erred in imposing sentence pursuant to his convictions under the license charges. Under the statute governing the license charges, an unlicensed person who causes an accident that results in bodily injury to another person is guilty of a misdemeanor of the second degree. **See** 75 Pa.C.S.A. § 3742.1. If, however, the accident results in death or serious bodily injury to another person, he is guilty of a felony of the third degree. **See id**. "Serious bodily injury" is defined in the Crimes Code as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of a bodily member or organ."  18 Pa.C.S.A. § 2301.

The factual issues of whether Shirk caused serious bodily injury to Emilee Neely and Ryan Daniels were presented to the jury in several different contexts on the verdict sheet. First, under the DUI charges, the verdict sheet presented explicit questions as to whether Daniels and Neely suffered serious bodily injury. In both instances, the jury answered "Yes." Next, the jury was asked to determine whether Shirk was guilty of

aggravated assault by vehicle while DUI. While there is no explicit finding of serious bodily injury on the verdict sheet, the trial court properly instructed the jury that serious bodily injury was an element of the crime. *See* N.T., Trial, 5/13/14, at 920. The jury found Shirk guilty of aggravated assault while DUI.

The genesis of this issue on appeal is the jury's response to the third time it answered the question of whether Neely and Daniels suffered serious bodily injury. For the license charges, the verdict sheet presented explicit questions asking whether Neely and Daniels suffered serious bodily injury. In both instances, the jury responded "No."

At sentencing, the Commonwealth argued that the trial court should disregard the jury's explicit finding, and instead sentence Shirk as if the jury had convicted him of causing serious bodily injury under the license charges. *See* N.T., Sentencing, 7/7/14, at 27. Surprisingly, the trial court agreed with the Commonwealth. The trial court then overrode the jury's explicit finding to sentence Shirk as if he had been convicted of causing serious bodily injury under the license charges.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The United States Supreme Court has stated that "the statutory maximum for *Apprendi* purposes is the

maximum sentence a judge may impose solely on the bases of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, 542 U.S. 296, 303-304 (2004).

A conviction under the license charges for causing only bodily injury has a statutory maximum sentence of two years. *See* 18 Pa.C.S.A. § 106(b)(7). In contrast, a conviction for causing serious bodily injury has a statutory maximum sentence of seven years. *See* 18 Pa.C.S.A. § 106(b)(4). Thus, the sentencing court's action in disregarding the explicit verdict of the jury and instead sentencing Shirk as if he had caused serious bodily injury to Neely and Daniels increased the statutory maximum sentence. Under *Apprendi* and its progeny, this was illegal.

On appeal, the Commonwealth does not address *Apprendi*. Instead, it contends that "a [s]entencing [c]ourt has the implicit authority to apply a sentence enhancer to a defendant's sentence when the facts adduced at trial clearly support that the sentence enhancer has been established." In support of this stunning assertion, the Commonwealth cites to two opinions published by this Court. First, the Commonwealth cites to an appeal from a civil verdict where the trial court molded a verdict to reflect its legal conclusion that there was insufficient evidence to support an award of future medical expenses. *See Mendralla v. Weaver Corp.*, 703 A.2d 480, 486 (Pa. Super. 1997).

*Mendralla* is clearly inapposite, for multiple reasons. First, it involved a civil verdict, and therefore was not concerned with the Constitutional issues that motivate *Apprendi* and its progeny. Furthermore, even if we were to ignore this palpable distinction, the molding of the verdict that was approved in *Mendralla* involved the trial court concluding that the plaintiff, who bore the burden of proof at trial, failed as a matter of law to meet that burden regarding future medical expenses. The trial court rectified this error by reducing the verdict instead of granting a new trial since the verdict sheet explicitly set forth the amount the jury awarded for future medical expenses.

In the present case, it was the Commonwealth that bore the burden of proof, not Shirk. As such, the trial court could not conclude, as a matter of law, that Shirk had failed to meet his non-existent burden. Furthermore, the trial court overrode an explicit factual finding made by jury and instead substituted its own factual finding to increase Shirk's liability. Even in civil cases, a judge may not mold a verdict in a manner that increases liability. *See Raymond L.J. Rilling, Inc. v. Schuck*, 29 A.2d 693, 694 (Pa. 1943). Thus, *Mendralla* cannot logically support the trial court's action in this case.

The other case cited by the Commonwealth on appeal involves, thankfully, a criminal appeal. *See Commonwealth v. Kleinicke*, 895 A.2d 562 (Pa. Super. 2006) (*en banc*). The Commonwealth quotes the following passage of *Kleinicke*: "a sentencing court has broad discretion to consider evidence in determining a sentence…." *Id*., at 568. However, the

Commonwealth fails to note the *en banc* panel's explicit distinction between the case before it, involving imposition of a mandatory minimum, and cases where the statutory maximum had been increased. ***See id***., at 575. Furthermore, the Commonwealth is apparently unaware that the explicit holding of **Kleinicke**, that judicial fact-finding that results in the imposition of mandatory minimums does not offend the right to a jury trial, has since been overruled by **Alleyne v. United States**, 133 S.Ct. 2151 (U.S. 2013). Thus, **Kleinicke** does not buttress the Commonwealth's position.

Having reviewed the sentencing transcript in light of the law under **Apprendi** and its progeny, we conclude that the trial court imposed an illegal sentence for the license charges. We therefore vacate the sentences for counts seven and eight and remand for re-sentencing on these two convictions. As these two sentences were imposed entirely concurrent to other sentences, we do not believe that we have upset the trial court's sentencing scheme, and we need not vacate all of the sentences imposed.

Turning to Shirk's remaining issues, we note that Shirk argues that the same inconsistencies in the jury's verdict that led the Commonwealth to request the trial court to increase the grading of the license charges should instead inure to his benefit and void the jury's verdict on the charges of aggravated assault while DUI of Neely and Daniels. "Consistency in verdicts is not required" and Pennsylvania courts are not to speculate as to the

nature of the jury's deliberations in the face of inconsistent verdicts. *Commonwealth v. Moore*, 103 A.3d 1240, 1247 (Pa. 2014).

Shirk attempts to escape the application of *Moore* by arguing that the present case is distinguishable because the inconsistency is in a factual finding, and not a verdict. We disagree that this case is distinguishable from *Moore*. While the verdict sheet is more explicit than usual regarding the license charges, the reality is that the jury returned a not guilty verdict on the third degree felony license charges stemming from Neely and Daniels. *Moore* is therefore directly on point, and we conclude that Shirk's argument merits no relief.

Next, Shirk argues that the trial court erred in permitting the Commonwealth's medical expert, Harry Kamerow, M.D., to testify as to the expert opinion of the emergency room physician, Michael Henry, M.D., who treated Shirk after the accident. In particular, Shirk objects to Dr. Kamerow's testimony that Dr. Henry indicated in his written notes that Shirk was intoxicated when he presented at the emergency room the night of the accident. *See* N.T., Trial, 5/13/14, at 520.

We note "the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Fransen*, 42 A.3d 1100, 1106 (Pa. Super. 2012), *appeal denied*, 76 A.3d 538 (Pa. 2013) (citation omitted). A trial court abuses its discretion if it misapplies the law or rules

in a manner lacking reason. *See Commonwealth v. Rega*, 856 A.2d 1242, 1244 (Pa. Super. 2004).

> Pennsylvania Rule of Evidence 703 states the following.
>
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

An expert may not simply act as "a mere conduit for the opinion of another," under Rule 703. Pa.R.E., Comment.

Here, it is clear that Dr. Kamerow's testimony regarding Dr. Henry's opinion rendered Dr. Kamerow a mere conduit for Dr. Henry's opinion. This was error. However, we conclude that any prejudice suffered by Shirk from this testimony was *de minimus*, and therefore harmless. "The harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial. Harmless error exists if the record demonstrates, *inter alia,* that the error did not prejudice the defendant or the prejudice was *de minimis.*" *Commonwealth v. Gonzalez*, 109 A.3d 711, 731, (Pa. Super. 2015) (citation and internal quotation marks omitted). The Commonwealth presented a bounty of evidence suggesting that Shirk was intoxicated that night, including the results of two blood tests, eyewitness testimony of Shirk's actions, and Dr. Kamerow's independent expert opinion. The brief mention of Dr. Henry's opinion in the notes was but a drop in an overflowing bucket.

Next, Shirk raises another challenge to the trial court's admission of evidence. This time, it concerns the admission of post-mortem photographs of Kelly Rider. We review challenges to the admission of photographic evidence as follows.

> The admissibility of photographs falls within the discretion of the trial court and only an abuse of that discretion will constitute reversible error. The test for determining whether photographs are admissible involves a two-step analysis. "First, the court must decide whether a photograph is inflammatory by its very nature. If the photograph is deemed inflammatory, the court must determine whether the essential evidentiary value of the photograph outweighs the likelihood that the photograph will improperly inflame the minds and passions of the jury."

***Commonwealth v. Lowry***, 55 A.3d 743, 753 (Pa. Super. 2012) (internal citations omitted).

In the instant case, the trial court concedes that the photographs of Kelly Rider were inflammatory. However, the trial court reasoned that the photographs were "necessary to assist the jury in showing the nature, location, and extent of the wounds sustained by Ms. Rider, and to help the jury understand the forensic pathologist's process of deduction." We cannot conclude that this reasoning represents an abuse of discretion, and therefore Shirk's argument merits no relief on appeal.

Shirk next challenges the sufficiency of the evidence supporting his conviction for reckless driving. In order to support a conviction for reckless driving, the Commonwealth was required to present evidence that Shirk drove his "vehicle in a willful or wanton disregard for the safety of persons or

property." 75 P.S. 3736(a). Shirk argues that the evidence was insufficient to establish that he acted in a willful or wanton manner.

The following standard governs our review of a challenge to the sufficiency of the evidence.

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. [T]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Mauz*, 122 A.3d 1039, 1040-41 (Pa. Super. 2015) (citation omitted).

Shirk contends that the only evidence of willful or wanton behavior on his part was the evidence that he was intoxicated. He argues that under *Commonwealth v. Jeter*, 937 A.2d 466 (Pa. Super. 2007), evidence of intoxication alone is insufficient to support a conviction for reckless driving. However, we note that the Commonwealth presented significant evidence of wanton behavior apart from Shirk's intoxication. At the time of the accident, it was drizzling and the roadway was wet. *See* N.T., 5/12/14, at 99. The vehicle was travelling at a speed in excess of 60 miles per hour. *See id*., at

350. The speed limit for the section of road Shirk was driving on was 45 miles per hour. *See id.*, at 355. As he approached the left hand curve where the accident occurred, Shirk was driving between 60 and 65 mile per hour. *See id.*, at 99. This evidence was sufficient, independent of Shirk's intoxication, to support a conviction for reckless driving.

Finally, Shirk contends that the trial court abused its discretion in imposing a five to ten year sentence of imprisonment on the homicide by vehicle – DUI conviction. Shirk concedes that this issue raises a challenge to the discretionary aspects of the sentence. *See* Appellant's Brief, at 8.

"A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> [We] conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (quotation marks and some citations omitted).

- 13 -

Here, Shirk failed to raise this issue either in a post-sentence motion or at sentencing. As such, Shirk has failed to preserve this issue for our review.

In summary, we conclude that the trial court erred in imposing sentence on counts seven and eight, and therefore vacate those sentences and remand for re-sentencing. In all other regards, we affirm the judgment of sentence.

Judgment of sentence affirmed in part and vacated in part. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

President Judge Emeritus Ford Elliott joins the memorandum.

President Judge Emeritus Stevens concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/18/2016